IDA M. KELSEY, Appellee, *vs.* MARY CLAUSEN, Appellant.

*Opinion filed February 20, 1913.*

1. SPECIFIC PERFORMANCE—*when contracts should be construed together.* Two contracts executed by the same parties and which concern the same subject matter are to be read and construed together as constituting a single transaction, though they are executed at different times.

2. SAME—*when second contract is merely a modification of the first.* Where a partition contract between two heirs provides that one shall have a house and lot and a certain 160 acres of farm land and the other shall have the remainder of the farm, amounting to about 184 acres, the conveyances to be made after survey, a second agreement, made after the survey, which does not mention the

house and lot but recites that the parties have heretofore mutually agreed upon a partition of the lands owned by the ancestor at her death, a survey of which "has heretofore been made," and recites that owing to the construction of a drainage ditch across the lands a re-allotment of said lands has been agreed upon, will be held to modify the original contract as to the farm lands, only, and not as superseding such contract as to the house and lot.

3. SAME—*when parol evidence does not tend to vary terms of written contract.* Where two contracts concerning the partition of land are executed between the same parties, parol evidence tending to show the circumstances under which the second of the contracts was drawn and the object of the parties in making it is not inadmissible under the rule forbidding the introduction of parol evidence to alter or vary the terms of a written contract.

4. PRACTICE—*court not bound to postpone hearing on original bill to await hearing on cross-bill.* It is within the discretionary power of the chancellor to postpone the hearing upon an original bill until the cross-bill is ready, so that both may be heard together; but the filing of a cross-bill, which is a matter of right, does not necessarily stay the hearing upon the original bill.

5. SAME—*party desiring to file a cross-bill should act with due diligence.* A defendant who desires to file a cross-bill in a chancery proceeding should act with due diligence and file the same without unreasonable delay, so that it may be heard with the original cause, if so desired.

6. SAME—*when refusal to stay hearing on original bill after filing cross-bill is proper.* Where a cross-bill is not filed in a specific performance case until about three years after the filing of the original bill and after the master has taken the evidence and prepared his report, ready to be submitted to the court, it is not an abuse of the chancellor's discretion to proceed to a final hearing on the original bill before the cross-bill is ready for hearing.

7. DEMAND—*when the failure to demand deed is not material.* Failure of the complainant, in a suit to specifically enforce a partition agreement, to make formal demand upon the defendant to execute a deed does not affect the merits of the suit nor require apportionment of costs, where the complainant had performed her part of the contract and made and delivered her deed, and the defendant, instead of tendering a deed and asking for a dismissal of the bill at complainant's costs, denied complainant's right to a deed and contested such right throughout the case.

APPEAL from the Circuit Court of DeKalb county; the Hon. DUANE J. CARNES, Judge, presiding.

CLIFFE & CLIFFE, for appellant.

JONES & ROGERS, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Ida M. Kelsey filed a bill in the circuit court of DeKalb county against Mary Clausen. The defendant answered the bill, and the cause was referred to a master in chancery to take the evidence and report his conclusions of law and fact. The master took the testimony and prepared his report. On July 18, 1912, the master served notice on the solicitors for the respective parties that his report was ready and would remain in his office for inspection until July 29, and that would be the last day for filing objections to the same. On July 25 Mary Clausen filed her objections. On the day before the objections were filed with the master, but six days after the notice that the report was ready, Mary Clausen filed a cross-bill. Summons was issued on the cross-bill, returnable to the October term of the DeKalb county circuit court. After overruling the objections filed by Mary Clausen the master submitted his report to the court. The objections were renewed as exceptions before the court, all of which were overruled, and a decree was rendered granting a specific performance as prayed for in the original bill. To reverse this decree Mary Clausen, the defendant below, has perfected an appeal to this court.

There is no serious conflict in the testimony. The undisputed evidence introduced before the master establishes the following facts: Sabrina Josyln died intestate May 4, 1906, leaving appellant and appellee as her only heirs. At the time of her death she owned about 344 acres of farming lands in DeKalb county, and a town lot, improved by a house, in the village of Cortland. The town lot is described as lot 3, in block 10, of the original village of Cortland. The town lot was encumbered with a mortgage for $600. It does not appear that there was any other indebtedness

against Mrs. Joslyn's estate. Appellant and appellee were the sole heirs and both of them were of mature age and married. On June 7, 1906, appellant and appellee entered into the following written agreement:

"For a valuable consideration and in consideration of a speedy settlement in the matter of the real estate owned by Sabrina Joslyn in her lifetime, we, the undersigned children, sole and only heirs-at-law of the said Sabrina Joslyn and now tenants in common of said real estate, do hereby agree to make partition and division of said real estate as follows, to-wit: The undersigned Ida M. Kelsey to have the south 160 acres of the farm lands situated in the town of Cortland, and also to have the house and lot in Cortland by assuming the payment of the mortgage upon said house and lot, and the undersigned Mary Clausen is to have the remaining portion of said farm land of which the said Sabrina Joslyn died seized. It is further agreed between the parties hereto that the share or portion so to be divided between the parties hereto is to be determined by a survey thereof to be made and descriptions thereof to be made from such survey, and when such survey and descriptions are made, then proper deeds of conveyance are to be executed and delivered in accordance with such division and partition. It is further agreed between the parties that the expense of making such survey and description is to be borne equally between the parties.

"The parties hereto have on this 7th day of June, 1906, set their hand and seals.

IDA M. KELSEY, (Seal)
MARY CLAUSEN. (Seal)"

After this agreement was executed the parties employed Walter M. Hay to survey the farm lands, and he did so and established the line, dividing the lands in accordance with the agreement of the parties, with which they were apparently both satisfied. Appellee took possession of the house and lot in Cortland and paid the mortgage thereon but did not receive any deed thereto from appellant. After the agreement above set out was entered into and before conveyances had been exchanged for the farm lands a drainage ditch was located across the tract. The drainage ditch did not follow the division line that had been established by the surveyor. As the drainage ditch was located it would require each of the parties to cross the drainage ditch to

reach a small portion of her lands. On November 21, 1907, the parties entered into a further agreement, as follows:

"This agreement, executed in duplicate this 21st day of November, 1907, between Ida M. Kelsey and Mary Clausen, both residents of the town of Cortland, in the county of DeKalb and State of Illinois, witnesseth:

"The parties hereto, being the only heirs-at-law of Sabrina Joslyn, deceased, have heretofore agreed upon a mutual partition of the lands owned by the said Sabrina Joslyn at the time of her decease and a survey thereof has heretofore been made. By reason of the proposed construction of a drainage ditch by the commissioners of Union Drainage District No. 1 of the towns of Cortland and Pierce, in DeKalb county, across the lands owned by the parties hereto, a re-allotment of the said lands has this day been agreed upon. The said Mary Clausen shall convey to said Ida M. Kelsey all her right, title and interest in and to the south half (½) of the north-east quarter (¼) of section thirty-three (33) and so much of the north-east quarter (¼) of said north-east quarter (¼) as shall lie south of the south bank of said proposed drainage ditch, and in addition thereto so much of the west half (½) of the north-west quarter (¼) of section thirty-four (34) as will, together with the lands in said section thirty-three (33), make a total acreage of one hundred sixty (160) acres, all of said real estate located in township forty (40), north, range five (5), east of the third principal meridian, in the township of Cortland, in said DeKalb county. The said Ida M. Kelsey shall convey to the said Mary Clausen all of her right, title and interest in and to the lands owned by the said Sabrina Joslyn at the time of her decease, except so much thereof as is above described and which is to be held and owned in severalty by the said Ida M. Kelsey.

"Witness the hands and seals of the parties hereto the date first above written.
                                        IDA M. KELSEY, (Seal)
                                        MARY CLAUSEN. (Seal)"

It will be noted that after describing the lands to be conveyed to appellee, this second agreement provides that appellee "shall convey to the said Mary Clausen all of her right, title and interest in and to the lands owned by the said Sabrina Joslyn at the time of her decease, except so much thereof as is above described." Appellant contends that under the clause last above quoted from the contract of November, 1907, she is entitled to all of the real estate of which her mother died seized except that specifically de-

scribed in the second agreement.  Appellee contends that
the second agreement had no reference to the town lot, and
that she is entitled to it under the proper construction of
the two instruments.  The court below sustained appellee's
contention and awarded her a decree for the conveyance of
the undivided interest of appellant in the city lot.

Appellant contends that the second instrument was an
entire contract and completely superseded the first agree-
ment.  We cannot give our assent to this view.  A careful
reading of the second agreement will clearly show that it
had no relation to the village property.  It refers to the
former agreement, and recites that the parties "have here-
tofore agreed upon a mutual partition of the lands owned
by the said Sabrina Joslyn at the time of her decease, *and
a survey thereof has heretofore been made."*  The refer-
ence to "lands," a survey of which had been made, clearly
referred to the farm lands.  There had been no survey of
the town lot nor was there any necessity for a survey.  The
agreement next recites that by reason of the construction
of a drainage ditch "across the lands owned by the parties
hereto, a re-allotment of said lands has this day been agreed
upon."  The drainage ditch crossed the farm lands and had
nothing to do with the town lot, and it was by reason of
the drainage ditch being located upon the farm lands that
"a re-allotment of said lands" had been agreed upon.  Keep-
ing in mind the subject matter of this second contract as
the same clearly appears from the face of the instrument,
the intention of the parties as to what each was to have is
clear enough.  The contract, after describing the portion of
the land that was to be conveyed to appellee; provides that
appellee shall convey to appellant "all of her right, title and
interest in and to the *lands* owned by the said Sabrina Jos-
lyn at the time of her decease, except so much thereof as
is above described," etc.  The word "lands" in this clause
of the agreement was intended by the parties to include all
of the farm lands owned by their mother at the time of

her death, except 160 acres that was specifically described
in the agreement and which was set apart for the appellee.
The effect of the second agreement was merely to change
the boundary line between the parties as to the farm lands
so as to make it conform to the banks of the drainage
ditch. The second agreement did not supersede the first
entirely, but operated merely as a modification of it as to
the division line. Under the two agreements, construed as
one contract, appellant received about 184 acres of farm
lands unencumbered, while appellee received 160 acres of
farm land and the house and lot subject to an encumbrance.
These two instruments being executed between the same
parties and relating to the same subject matter, are to be
read and construed as constituting a single transaction.
(*Wilson* v. *Roots,* 119 Ill. 379; *People* v. *Economy Light
and Power Co.* 241 id. 290.) The court below construed
the two instruments together, and held that the first agree-
ment controlled as to the house and lot, which is the only
property involved in this litigation. In this we think the
court below was clearly right.

The lawyer for the drainage district who wrote the sec-
ond instrument, and the surveyor who made the survey, tes-
tified to conversations and transactions in connection with
these contracts. Appellant complains that this was an im-
proper use of parol evidence, on the ground that it tended
to vary the terms of the written instrument. This is a
misapprehension. There is nothing in the evidence of these
witnesses that in any way tends to contradict or vary the
terms of the written instruments. The only object of this
evidence,—and that was the extent to which it went,—was
to show the circumstances and the object the parties had
in view, for the purpose of enabling the court to properly
construe the instruments in the light of the circumstances
under which they were drawn, and for this purpose parol
evidence is admissible. *Gardt* v. *Brown,* 113 Ill. 475.

Appellant also assigns error on the action of the court in proceeding to a final hearing upon the original bill before the cross-bill was ready for hearing. It is within the discretionary power of the chancellor to postpone the hearing upon an original bill until the cross-bill is ready, so that they may both be heard together. But the filing of the cross-bill, which is a matter of right, does not necessarily stay the hearing upon the original cause. (*Beauchamp* v. *Putnam,* 34 Ill. 378; *Quick* v. *Lemon,* 105 id. 578.) Where a defendant desires to file a cross-bill in a chancery proceeding he should act with due diligence and file the same without unreasonable delay, with a view to having it heard with the original bill. (*Fread* v. *Fread,* 165 Ill. 228.) In the case at bar the cross-bill was not filed until about three years after the original suit was commenced, and at the time it was filed the evidence had all been taken and the master's report prepared, ready to be submitted to the court. Under such circumstances there was no abuse of the discretion of the chancellor in proceeding to a final hearing upon the original bill before the cross-bill was ready.

Appellant insists that there is no proof that appellee demanded a deed to the house and lot from appellant before filing her bill. The master found that appellee had made, executed and delivered to appellant a deed to all of the premises to which she was entitled under the agreement. Having fully performed the contract on her part appellee was entitled to a conveyance from appellant of her undivided interest in the village lot. Where a party has fully performed a contract on his part and is entitled in equity to call upon the other party to perform, the only purpose a demand can serve is to give the defaulting party an opportunity to comply with the contract without the cost of litigation. When the bill was filed, had appellant tendered a deed to her interest in the town lot and asked that the bill be dismissed at the cost of appellee the court would no

doubt have sustained the motion. But appellant's course has been quite different from that. She has contested appellee's right at every step, and insists that she is entitled to a conveyance from appellee for the premises involved. It was not indispensable to appellee's right to file a bill to go through the useless form of asking appellant to execute a deed, which would have been followed by a refusal. Under the facts in this record the commencement of the suit without making a demand for a deed does not require an apportionment of the costs, much less a reversal of the decree.

Finding no error in this record the decree of the circuit court of DeKalb county is affirmed.      *Decree affirmed.*